IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALFRED R. DYER, SR.,

    Petitioner,                   No. 2:04-cv-0484 JAM JFM P

   vs.

T. L. ROSARIO, Acting Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

                              /

         Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner claims that his right to due process has been violated by the deprivation of good time/work time credits that accrued during periods of incarceration that preceded his current sentence.

## BACKGROUND

         In 1983, petitioner was convicted in the Alameda County Superior Court of two counts of first degree murder and sentenced to death. In 1998, the United States Court of Appeals for the Ninth Circuit reversed petitioner's conviction. See Dyer v. Calderon, 151 F.3d

---

[1] Although petitioner challenges the execution of his sentence, not the validity of his conviction, jurisdiction over this action arises under 28 U.S.C. § 2254 rather than 28 U.S.C. § 2241. See White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004).

1

970 (9th Cir. 1998). The matter was subsequently remanded to the Alameda County Superior Court for retrial. On March 30, 2001, pursuant to a plea agreement petitioner entered a guilty plea to two counts of second degree murder. (Exhibit B to Answer to Petition for Writ of Habeas Corpus, filed August 20, 2004.) The plea agreement provided that petitioner would be sentenced to fifteen years to life in prison on each count, that each sentence would run consecutively, and that petitioner would waive ten years of credit for "actual time" spent in custody between 1983 and 1998. (Id.) On June 15, 2001, petitioner was sentenced to a total of thirty years to life in prison. (Exhibit D to Answer.) At sentencing, the court found that petitioner had waived 3,650 days of actual custody credits and that petitioner was entitled to 3,735 days of actual custody credits and 1866 days of good time/work time credits. (Id. at 10.) The good time/work time credits were calculated on the basis of one credit for two days of the actual custody credits awarded to petitioner. (Id.) By the instant petition, petitioner seeks restoration of good time/work time credits earned during the ten years in custody for which he waived actual custody credits.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Petitioner's Claim

Petitioner claims that his due process rights have been violated by the failure to include in the calculation of his minimum eligible parole date (MEPD) good time/work time credits earned during the ten year period for which he waived actual custody credits at the time he entered his guilty plea. Specifically, petitioner contends that the denial of these credits violated the plea agreement pursuant to which his guilty plea was entered. The last reasoned rejection of this claim is the decision of the California Superior Court in and for the County of Alameda. (See Exs. H and I toAnswer.) The state court rejected the claim on the grounds that (1) "[p]etitioner and his counsel were present when sentence was imposed and the credits for

3

1 | actual and conduct were discussed. No objection was raised when the court ordered credits of
2 | 3735 actual and 1866 Sage credits;" and (2) petitioner had not shown cause for his "delay of over
3 | 18 months in filing the petition." (Ex. H to Answer.)

"[If] a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971) (ordering specific performance where prosecution made promise to defendant that it would file a departure motion). There are two questions presented by petitioner's claim:  whether the state agreed that petitioner would not waive good time/work time credits earned during the ten year period for which he waived actual custody credits, "and, if so, whether [p]etitioner's guilty plea was induced by that promise. See Mabry v. Johnson, 467 U.S. 504, 509-10, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (clarifying that a Santobello claim requires the plea to be induced by the prosecutor's promise)." Davis v. Woodford, 446 F.3d 957, 960-61 (9th Cir. 2006).

> Under Santobello . . ., a criminal defendant has a due process right to enforce the terms of his plea agreement. See also Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir.2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of the plea agreement."). [It has long been] clearly established federal law . . . that the construction and interpretation of state court plea agreements "and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." Ricketts v. Adamson, 483 U.S. 1, 6 n. 3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In California, "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles," People v. Shelton, 37 Cal.4th 759, 767, 37 Cal.Rptr.3d 354, 125 P.3d 290 (2006), and "according to the same rules as other contracts," People v. Toscano, 124 Cal.App.4th 340, 344, 20 Cal.Rptr.3d 923 (2004) (cited with approval in Shelton along with other California cases to same effect dating back to 1982). Thus, under Adamson, California courts are required to construe and interpret plea agreements in accordance with state contract law.

Buckley v. Terhune, 441 F.3d 688, 694-95 (9th Cir. 2006).

> In California, "[a]ll contracts, whether public or private, are to be interpreted by the same rules·····" Cal. Civ. Code § 1635; see also Shelton, 37 Cal.4th at 766-67, 37 Cal.Rptr.3d 354, 125 P.3d 290;

4

        Toscano, 124 Cal.App.4th at 344, 20 Cal.Rptr.3d 923. A court must first look to the plain meaning of the agreement's language. Cal. Civ. Code §§ 1638, 1644. If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. Civ. Code § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. Bank of the West v. Superior Court, 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992); Badie v. Bank of Am., 67 Cal.App.4th 779, 802 n. 9, 79 Cal.Rptr.2d 273 (1998) ("Although the intent of the parties determines the meaning of the contract, the relevant intent is objective-that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (internal quotation marks and citation omitted)). Courts look to the "objective manifestations of the parties' intent⋯." Shelton, 37 Cal.4th at 767, 37 Cal.Rptr.3d 354, 125 P.3d 290. If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654; see also Toscano, 124 Cal.App.4th at 345, 20 Cal.Rptr.3d 923 ("ambiguities [in a plea agreement] are construed in favor of the defendant").

Buckley, at 695-96.

Petitioner was arrested for the offenses at bar on March 23, 1981 and first sentenced on September 26, 1983. See Ex. One to Declaration of Eric Weaver (hereafter Weaver Declaration), at 19. Petitioner was in state prison on the original sentence from September 30, 1983 through March 12, 1999. Id. Following the reversal of his conviction by the United States Court of Appeals for the Ninth Circuit, petitioner was again in pre-sentence custody status from March 12, 1999 through June 15, 2001. Id; see Martinez, at 32.

On March 30, 2001, petitioner entered a plea of guilty to second degree murder pursuant to a plea agreement. During those proceedings, the prosecutor described the plea agreement to the court as follows:[2]

> MR. JACOBSON: . . . . The agreement, as I understand it, is that Mr. Dyer's going to plead guilty to Count 1, murder in the second degree, stipulated lesser included offense.

---

[2] It does not appear that there was a written plea agreement. See Declaration of Eric Weaver, filed June 9, 2005, at ¶ 2.

1
2
3
4
5
6
7
8

> Plead guilty to Count 3, murder in the second degree, stipulated lesser included offense.
>
> Those two charges, the sentence will be run consecutive for a total of 30 years to life.
>
> <u>He will waive ten years of actual time, not good time credits, but actual time, for a waiver of 3650 days.</u>
>
> He will waive appellate rights.
>
> And I believe he's going to tell us whether he's satisfied with his representation today.
>
> Those are – that's my understanding of the disposition.

9  (Ex. B toAnswer, Reporter's Transcript of Proceedings, Change of Plea, March 30, 2001, at 1-2

10 (emphasis added).)  After inquiry about the effective date of the waiver, the judge stated that the

11 waiver would be as of the date of entry of the plea.  <u>Id</u>. at 3.  After the court's formal advisements

12 to petitioner, the court asked the prosecutor if there were any additional advisements.  In

13 response, the prosecutor said, "Just explicitly that Mr. Dyer understands he's waiving ten years of

14 actual time as part of this disposition."  <u>Id</u>. at 7.

15  On April 16, 2001, the prosecutor wrote a letter to the Adult Probation Office.

16 Ex. Two to Weaver Declaration.  In that letter, the prosecutor set forth the terms of the plea

17 bargain as follows:  "The terms of the plea bargain are that defendant is to be sentenced

18 consecutively to 15 years to life for each murder for a total of 30 years to life.  Additionally,

19 defendant as part of the plea bargain defendant [sic] waived 3650 actual days of credit.  Further,

20 defendant has waived his appellate rights."  <u>Id</u>.

21  Petitioner was sentenced on June 15, 2001.  At the time of the June 15, 2001

22 sentencing, the following exchange took place:

> THE COURT:  All right.  Pursuant to Rule 412 of the negotiated disposition, the sentencing is as follows:
>
> As to Count 1, that's a 187 in the second degree, Mr. Dyer will be sentenced to 15 years to life.

26 /////

6

|   |   |
|---|---|
| 1 | As to Count 3, that also is a 187 in the second degree, he will be sentenced to 15 years to life. |
| 2 | |
| 3 | That second 15 years to life will run consecutive to the first 15 to life. It will be a total of 30 years to life. |
| 4 | Previously -- the balance of the information was dismissed. |
| 5 | Previously Mr. Dyer has waived 3,650 days of actual time in custody. So the time in custody will be as of the time he was referred and he was referred on -- |
| 6 | |
| 7 | MR. JACOBSON: Your Honor -- |
| 8 | THE COURT: Is that -- what date was he referred, Madame Clerk? 3-30, was it? |
| 9 | |
| 10 | MR. JACOBSON: There's numbers on the second page of the probation report that as of June 1st, he has 7,371 days. I think you need to add 14 days to that total and then subtract 3,650 days. |
| 11 | |
| 12 | THE CLERK: He was referred on March 30th. |
| 13 | MR. JACOBSON: Judge, I get a total of 3,735 days, should be the time that Mr. Dyer gets. |
| 14 | That would be a waiver of 10 years, by my calculation. |
| 15 | THE COURT: What did you get? |
| 16 | MR. JACOBSON: Seven thousand -- I'm sorry -- 3,735 days. |
| 17 | THE COURT: That's what I get. |
| 18 | He will be -- the actual time in custody pursuant to the Rul 412 would be 3,735 days. 3735, Madame Clerk. |
| 19 | |
| 20 | And in 1980, was that -- good time work time credits was the normal? |
| 21 | MR. JACOBSON: I think it would have been one day for two days served. |
| 22 | |
| 23 | THE COURT: So that will be 3735 actual, 1866 Sage credits for a total, Madame Clerk, I get 5601. |
| 24 | Ex. D to Answer, at 9-10. |
| 25 | Thereafter, on December 2, 2001, the California Department of Corrections and |
| 26 | Rehabilitation (CDCR) calculated petitioner's minimum eligible parole date (MEPD) on his new |

7

1  sentence. Ex. One to Weaver Declaration, at 15. In so doing, the CDCR deducted a total of
2  5,610 days of pre- and post-sentence credit from petitioner's total sentence, based on the 5,601
3  days of credit granted by the trial court plus nine days. Id. The CDCR set petitioner's minimum
4  eligible parole date at March 27, 2011. Id. On December 6, 2001, petitioner filed an inmate
5  grievance claiming that MEPD calculation erroneously omitted work time and good time credits
6  earned during petitioner's original sentence. Id. at 8. Petitioner's grievance was denied at all
7  levels of administrative review. Id. at 8-9. The CDCR took the position that the actual time
8  petitioner waived "no longer exists" and that he would "not receive any good time attached to the
9  ten year period you waived." Id. [3] [4]

California law provides that an inmate whose judgment of conviction is set aside and who is subsequently sentenced again to prison for the same criminal conduct is entitled to credit for time served in custody against the new prison sentence. See Cal. Penal Code § 2900.1.[5] California law also provides that criminal defendants are entitled to credit against their prison sentences for time served in custody prior to sentencing. See Cal. Penal Code § 2900.5.[6]

---

[3] Using that formula, the CDCR arrived at a total of 996 days of good time credits for the period petitioner was in state prison on his original sentence. Id. It is unclear where those 996 days were factored in to the MEPD calculation.

[4] During the course of administrative proceedings on petitioner's grievance, a new calculation worksheet was prepared on March 8, 2002, which gave petitioner 5615 days of pre/postsentence credit and a new MEPD of March 24, 2011. Id. at 16.

[5] "'Where a [petitioner] has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts.'" Cal. Penal Code §2900.1 (quoted in In re Martinez, 30 Cal.4th 29, 33 (2003)).

[6] That section provides in relevant part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including, but not limited to, any time spent in a jail, camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment, . . . . "(b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the

1   In addition, "[t]he Penal Code provides that inmates in county jails and state prisons may have
2   their sentences reduced as a reward for their conduct, including work and good behavior." In re
3   Martinez, 30 Cal.4th at 31.  The rate at which these conduct credits, also know as good
4   time/work time credits, accrue "depends on numerous factors, including whether the confinement
5   is presentence or postsentence." Id.[7]  Conduct credits earned during both pre- and postsentence
6   periods in custody can be applied to a new prison sentence imposed following reversal of a
7   conviction and a new conviction based on the same conduct.  Id.

8   Actual custody credits are different from conduct credits.  See, e.g., People v.
9   Sage, 26 Cal.3d 498 (1980); see also People v. Buckhalter, 26 Cal.4th 20 (2001); see also
10  Martinez, supra.  Conduct credits are generally earned as a percentage of time days spent in
11  custody, see, e.g., Cal. Penal Code §§ 2931, 4019(b), but they are added to actual custody credits
12  for purposes of sentence reduction.  See People v. Sage, at 508-509.

13  In the instant case, the prosecutor represented that pursuant to the plea agreement
14  petitioner would waive "actual time, not good time credits, but actual time, for a waiver of 3650
15  days."  At sentencing and subsequently by the CDCR, petitioner's waiver was treated as a waiver
16  of days spent in custody for purposes of both actual custody credits and good time/work time
17  credits.  Consequently, despite the prosecutor's express representation that petitioner was not
18  waiving good time credits petitioner lost good time/work time credits that had accrued during the
19  ten years for which he waived actual custody credits.  As noted above, however, petitioner's plea
20  agreement included an express representation by the prosecutor that petitioner was not waiving
21  /////

---

same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.""  Cal. Penal Code § 2900.5(a),(b).

[7] In Martinez, the California Supreme Court described California's sentence credit system as "a complex array of presentence and postsentence credit schemes to serve various functions." Id. at 34.

9

good time credits.[8] The manner in which petitioner's credits were calculated at sentencing and subsequently by CDCR violated the plea agreement between the parties and violated petitioner's right to due process.

Federal habeas corpus relief is only available if the state courts' rejection of petitioner's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . .was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." As noted above, the last reasoned rejection of petitioner's claim was the decision of the state superior court, which rejected the claim on the grounds that (1) "[p]etitioner and his counsel were present when sentence was imposed and the credits for actual and conduct were discussed. No objection was raised when the court ordered credits of 3735 actual and 1866 Sage credits;" and (2) petitioner had not shown cause for his "delay of over 18 months in filing the petition." (Ex. H to Answer.) At all times relevant to this action, it was clearly established federal law that "the construction and interpretation of state court plea agreements 'and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law,'" Buckley, 441 F.3d at 694-95 (quoting Ricketts v. Adamson, 483 U.S. 1, 6 n. 3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)), and that "under Adamson, California courts are required to construe and interpret plea agreements in accordance with state contract law." Id. at 695. Where, as here, the state court failed to interpret the plea agreement or to apply state contract law its decision is "unquestionably contrary to clearly established federal law." Id.

---

[8] Even if the plea agreement were viewed as ambiguous due to the prosecutor's representation that petitioner was waiving "actual time," rather than "actual custody credits," California law provides that where an uncertainty exists "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist," Buckley, 441 F.3d at 698 (citing § 1654 of the California Civil Code), in this case the prosecutor. In the instant case, the prosecutor's April 16, 2001 letter to the Adult Probation Department read together with the March 30, 2001 transcript of the entry of petitioner's plea constitutes strong evidence that the agreement reached by the parties was that petitioner would waive 3,650 days of actual custody credits and would not waive any good time credits.

"Under AEDPA, even where the state court has committed constitutional error under § 2254(d), 'habeas relief may still be denied absent a showing of prejudice.' Medina v. Hornung, 386 F.3d 872, 877 (9th Cir.2004). The relevant inquiry . . . is whether the state court's error . . . had a 'substantial and injurious effect'" on petitioner. Buckley, at 697 (quoting Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Here, petitioner lost several years of good time/work time credits against his current sentence.[9] Those credits, properly applied, would shorten the time between the commencement of petitioner's sentence and his minimum eligible parole date. This court finds that the error had a "substantial and injurious effect" on petitioner.

There remains the question of remedy. When a promise on which a plea rests is violated, the remedy is either specific performance of the plea agreement or the opportunity to withdraw the plea. See Santobello, at 262-63; see also Buckley, at 699. In his amended traverse, filed June 9, 2005, petitioner specifically represents that he "is not contesting the other elements of his plea bargain and *does not* seek to withdraw his guilty plea." Amended Traverse filed June 9, 2005, at 1. "Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to 'repair the harm caused by the breach.'" Buckley, id. (quoting People v. Toscano, 124 Cal.App.4th at 345 (citing People v. Kaanehe, 19 Cal.3d 1, 14, (1977)). Here, the harm caused by the breach is the delay in petitioner's minimum eligible parole date. The most appropriate way to remedy that harm is to require state officials to recalculate petitioner's good time/work time credits in accordance with the terms of the plea agreement.

/////

---

[9] The state court gave petitioner one day of good time/work time credit for every two days of actual custody. Under that formula, the loss of 3,650 days of "actual time" resulted in the loss of 1,825 days of good time/work time credit. As noted above, the CDCR's calculation of good time/work time available to petitioner from his original sentence was different. The exact number of good time/work time credits to which petitioner is entitled under the plea bargain is a matter of state law and should be determined by the state court and/or the CDCR consistent with the terms of any order by the district court adopting these findings and recommendations.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be granted; and

2. State officials be directed to recalculate petitioner's good time/work time credits in accordance with the terms of petitioner's plea agreement, to restore to petitioner all good time/work time credits lost as a result of the error described in these findings and recommendations, and to recalculate petitioner's minimum eligible parole date accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 11, 2008.

UNITED STATES MAGISTRATE JUDGE

12
dyer0484.157